**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY B. SULLERS, SR., | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 20 C 7696 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| INTERNATIONAL UNION OF ELEVATOR | ) | |
| CONSTRUCTORS LOCAL 2, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony B. Sullers Sr. filed suit in state court against Defendant International Union of Elevator Constructors Local 2 ("Union") claiming that the Union violated his rights under the National Labor Relations Act, 29 U.S.C. §151 *et seq.*, and the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, in its handling of a grievance Sullers filed against his employer. The Union removed the case to federal court (Dkt. 1) and now moves to dismiss the complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Sullers simultaneously moves to remand the case back to state court. For the reasons that follow, Sullers' motion for remand [11] is denied and the Union's motion to dismiss [7] is granted in part and denied in part.

## BACKGROUND

The following factual allegations are taken from Sullers' Complaint (Dkt. 1 at 10–19) and are assumed true for the purposes of this motion. *W. Bend. Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Sullers has worked as an elevator mechanic at ThyssenKrupp Elevator Corporation ("TKE") since 2014, during which he has been an active member of the Union. (Complaint at ¶¶ 1, 11). He is one of very few African American members of the Union. (*Id.* at ¶

1

2).  On November 19, 2018, TKE terminated Sullers, claiming there was no work for him, but soon after hired a Caucasian mechanic to fill his position. (*Id.* at ¶ 12).  On December 11, 2018, Sullers filed a grievance with the Union and initiated an investigation with the Illinois Department of Human Rights ("IDHR") regarding his alleged discriminatory termination. (*Id.* at ¶¶ 13, 18).

The grievance process is governed by a Collective Bargaining Agreement ("CBA") between TKE and the Union.  (*Id.* at ¶13). [1]  The first phase, the Oral Step, requires the complainant to discuss his grievance with a designated employer representative.  (*Id*. at 14).  Sullers discussed his grievance with Juan Gonzalez, one of the Union's designated employer representatives, but his grievance remained unresolved. (*Id*. at ¶¶ 14–15).  Sullers proceeded to the next step in the grievance process, Written Step One, and submitted a written grievance. (*Id*. at ¶¶ 16–17).  On January 28, 2019, the Union's Business Manager, John Valone, contacted Sullers with an offer from TKE for reinstatement and $14,000 in backpay in exchange for Sullers dropping the investigation he had initiated with IDHR. (*Id*. at ¶ 18).  Sullers refused to drop the investigation. (*Id.*)  On February 8, 2019, Valone contacted Sullers with a new settlement offer for $18,000 with the same requirement to cease his IDHR investigation. (*Id.* at ¶ 19).  Sullers again declined the offer. (*Id.*)

On December 23, 2019, Sullers contacted Gonzalez about the status of his grievance and Gonzalez told Sullers to contact Valone because Valone had taken over the grievance. (*Id.* at ¶ 21).  On December 30, 2019, Sullers called Valone for an update. (*Id.* at ¶ 22). Valone "yelled at Mr. Sullers and told him that there was nothing he could do for him unless Mr. Sullers agreed to drop his discrimination claims." (*Id.*)  Sullers contacted Eddie Christensen, the Union's Regional

---

[1] Although the CBA is not attached to the Complaint, it is quoted in the Complaint and central to Sullers' claims.  (*See* Complaint at ¶¶ 13–16, 25–26).  The Court may thus consider the CBA along with the Complaint in ruling on the present motions. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009).

Director, who reiterated that the Union would not pursue the grievance unless he dropped his discrimination claims. (*Id.* at ¶ 23). Subsequently, TKE informed the Union that it had denied Sullers' grievance. (*Id.* at ¶ 24). Although the CBA outlines a grievance appeal process through the National Arbitration Committee, Written Step Two, Sullers did not receive information regarding whether the Union had appealed his grievance to arbitration. (*Id*. at ¶¶ 25, 27).

In January 2020, Sullers contacted the National Labor Relations Board ("NLRB") and asked them to issue a complaint against the Union for breach of its duty of fair representation in handling his grievance. (*Id.* at ¶ 28). On February 19, 2020, Lisa Friedham-Weis, the NLRB investigator assigned to Sullers complaint, informed Sullers that the NLRB would not issue a complaint against the Union because Sullers' "grievance is still pending and has been referred to arbitration as of December 31, 2019." (*Id.* at ¶ 30). Sullers claims this was the first time he learned that his grievance was in arbitration. (*Id.*) On February 20, 2020, Valone emailed Sullers to let him know that the Union had referred his grievance to the National Arbitration Committee. (*Id.* at ¶ 30). Valone's email included what he claimed was a formal referral of Sullers' grievance to arbitration, but Sullers claims the document "did not constitute such a formal referral to the" National Arbitration Committee. (*Id.* at ¶ 31).

On February 24, 2020, Sullers emailed Union official Jim Bender to determine the status of his arbitration. (*Id.* at ¶32). Bender did not respond. (*Id.*) On March 4, 2020, the NLRB dismissed Sullers complaint based on evidence showing that his grievance had been referred to arbitration. (*Id.* at ¶ 33). On March 9, 2020, Sullers emailed Valone and Bender seeking more information on the status of the alleged arbitration. (*Id.* at ¶ 34). Neither responded. (*Id.*) On March 18, 2020, Sullers filed an appeal of the NLRB's decision not to issue a complaint against the Union. (*Id.* at ¶ 35). The NLRB denied Sullers' appeal based on evidence that his grievance

had been referred to arbitration. (*Id.*)

On June 10, 2020, TKE deposited $9,829.75 into Sullers bank account without any explanation or prior notice to him. (*Id.* at ¶ 37). Later that day, Gonzales told Sullers over the phone that his grievance was settled. (*Id.* at ¶ 38). The check stub for the payment reflected a gross amount of $18,031.80 which corresponded with TKE's last settlement offer and was labeled "Settlement." (*Id.*)

On October 13, 2020, Sullers filed a two-count complaint in the Circuit Court of Cook County, which the Union removed to federal court on December 23, 2020. (Dkt. 1). In Count I, Sullers alleges that the Union committed unfair labor practices in violation of Section 8(b)(1)(A) of the National Labor Relations Act ("NLRA"), 29 U.S.C. 158(b)(1)(A), by restraining Sullers' collective bargaining rights, when it failed to involve him in the alleged arbitration or proposed settlement of his grievance. (*Id.* at ¶ 43–45). Sullers further alleges the Union breached its duty of fair of representation in the manner it prosecuted Sullers grievance. (*Id.* at ¶ 46). In Count II, Sullers alleges the Union violated the Illinois Human Rights Act ("IHRA") by conspiring with TKE to retaliate against Sullers for initiating an investigation of racial discrimination with the IDHR and to induce Sullers to accept a settlement he had rejected. (*Id.* at ¶¶ 51–52).

## DISCUSSION

### I.    Motion to Remand

Sullers moves to remand the case back to state court, insisting that he has not alleged a federal cause of action. Removal to a federal court is appropriate so long as the court has original jurisdiction over action. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over "civil actions arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331. The parties spend much time arguing whether Sullers' claims are preempted by federal law, an

issue the Court addresses at length below, but Count I of Sullers' complaint is expressly brought under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq,* a *federal* statute. *Nelson v. Stewart*, 422 F.3d 463, 470 n. 5 (7th Cir. 2005) ("[F]air representation cases [brought under the NLRA] are grounded in federal law and are within the federal question jurisdiction of the district court."). There is no need to implicate the doctrine of preemption in assessing removability where Sullers alleges a federal cause of action. While Sullers attempts to recharacterize his NLRA claim as a state law claim, he cites to inapplicable preemption cases and cannot escape the express language of the complaint. As the master of his complaint, Sullers had sole discretion over the claims brought and he may not retreat from his express decision to bring a federal claim simply because the Union chose to exercise its right to remove the case to federal court. Thus, the Court has original jurisdiction over Count I and, at the very least, supplemental jurisdiction over Sullers' state law claim in Count II. Sullers' motion to remand is denied.

## II.    Motion to Dismiss

When considering a motion to dismiss for failure to state a claim, the Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead "detailed factual allegations," but the short and plain statement must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

### a. Count II: Preemption of IHRA State Law Claim

The Union argues Sullers' state law retaliation claim is preempted by the federal duty of fair representation and should consequently be dismissed. The duty of fair representation is a judicially implied duty arising from Section 9(a) of the NLRA, which grants a union the exclusive power to represent employees in its bargaining unit. *Nelson*, 422 F.3d at 469. This duty obligates unions "'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). When a state law claim is premised on conduct that is within the scope of the union's duty of fair representation, it is preempted by federal labor law. *See e.g.*, *Adkins v. Mireles*, 526 F.3d 531, 540 (9th Cir. 2008) (federal duty of fair representation "displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative"); *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000) ("Where a plaintiff's allegations fall within the scope of the duty of fair representation, federal labor law governs and ordinarily preempts any state-law claims based on those allegations."); *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1169 (5th Cir. 1989) ("[T]he NLRA duty of fair representation ... completely preempts state law[.]"); *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 831-32 (1st Cir. 1997) ( "[S]tate law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation."); *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1170-71 (4th Cir. 1985) (same); *Nelson v. Stewart*, 422 F.3d 463, 470 (7th Cir. 2005) ("We may assume for purposes of our decision today that our sister circuits have decided correctly that a union's implied duty of fair representation … effects complete preemption."). Thus, "state law claims brought by members of unions arising out of the union's representation of them in

6

disputes with employers are displaced by the federal law duty of fair representation." *Fuqua v. U.S. Postal Serv.*, 979 F. Supp. 2d 850, 859 (N.D. Ill. 2013).

Here, Sullers' IHRA retaliation claim is premised on the Union's violation of its duty of fair representation. Sullers alleges:

> The Union conspired with TKE to retaliate against Mr. Sullers for his opposition to TKE's unlawful discrimination by refusing to fulfill its duty of fair representation regarding Mr. Sullers' grievance … and by conspiring with TKE to induce Mr. Sullers to accept a settlement he had rejected and to forfeit his rights to have his claims of racial discrimination adjudicated[.]

(Complaint at ¶ 52). Sullers' retaliation claim attacks the Union's conduct in representing him regarding his discrimination grievance against TKE, directly implicating the Union's duty of fair representation. Count II is therefore preempted by federal labor law and is dismissed.

Sullers argues his IHRA claim is not preempted because preemption only applies if the state law claim is premised on a violation of the CBA and requires an interpretation of the CBA. (Dkt. 10 at 5). This argument, however, confuses preemption due to the duty of fair representation with preemption under § 301 of the Labor Management Relations Act ("LMRA"). The LMRA completely preempts a state law claim "if the resolution of [the] state law claim depends upon the meaning of a collective-bargaining agreement…." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988); *see also Nelson*, 422 F.3d at 467. Sullers is correct that his claim does not depend on the interpretation of the CBA, but that is because his claim is not based on a direct violation of the CBA. Thus, while LMRA preemption does not apply, Sullers IHRA claim independently invokes preemption under the duty of fair representation. Count II of Sullers complaint is dismissed.

### b. Count I: NLRA Breach of Duty of Fair Representation

Turning to Count I, the Union argues Sullers' NLRA claim is untimely and fails to state a

claim for breach of the duty of fair representation.

### i. Statute of Limitations

While a plaintiff is not required to anticipate and defeat affirmative defenses such as the statute of limitations in his complaint, if the "complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). A duty of fair representation claim is subject to a six-month statute of limitations. 29 U.S.C. § 160; *Taha v. Intl. Bhd. Of Teamsters, Loc. 781*, 947 F.3d 464, 472 (7th Cir. 2020). Where, as here, a claim is premised on the Union's failure to properly handle a grievance, the limitations period begins to run "from the time a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir.1986); *see also Morris v. Knutson*, 696 F. App'x 745 (7th Cir. 2017).

The Union contends that Sullers claim accrued on January 15, 2020, the deadline for the Union to appeal Sullers' grievance to arbitration via Written Step Two. This argument receives some support from the complaint. For example, Sullers claims the Union never actually appealed his grievance to arbitration (Complaint at ¶ 36) and admitted to filing a complaint with the NLRB in January 2020 "to issue a complaint against the Union for the failure of its duty of fair representation regarding his grievance under the National Labor Relations Act." (*Id*. at ¶ 28). Nonetheless, a month later, on February 19, 2020, Sullers learned that the Union had apparently appealed his grievance to arbitration. (*Id*. at ¶ 29). He continued to receive communications confirming this fact through March 2020. (*Id*. at ¶¶ 30–35). Sullers did not know that the arbitration process had been completed and that his grievance had been settled until June 10, 2020

when TKE deposited a settlement payment in his bank account. (*Id*. at ¶ 37). Thus, while Sullers suspected wrongdoing in January 2020 and *could* have filed suit at that time, the allegations, read in the light most favorable to Sullers, indicate that this suspicion was dissipated a month later when Sullers learned the Union had appealed his grievance. After this intervening event, Sullers did not learn the final outcome of his grievance until June 10, 2020, at which point, Sullers' suspicions regarding the Unions failure to arbitrate adequately were renewed. Hence, Sullers' duty of fair representation claim began to accrue on June 10, 2020. Sullers complaint, filed on October 12, 2020, is well within the six-month statute of limitations.

### ii. Failure to State a Claim

A breach of the duty of fair representation occurs only "when a union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190; *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1302 (7th Cir. 1992). Sullers argues the Unions actions were discriminatory and taken in bad faith. "Whether or not a union's actions are discriminatory or in bad faith calls for a subjective inquiry and requires proof that the Union acted (or failed to act) due to an improper motive." *Neal v. Newsp. Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003). "Declining to pursue a grievance as far as a union member might like isn't by itself a violation of the duty of fair representation." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013).

Sullers alleges John Valone, the Union official directly overseeing Sullers grievance, expressed hostility to Sullers and repeatedly attempted to intimidate him. (Complaint at ¶¶ 18–19, 22). Valone yelled at Sullers over the phone after Sullers attempted to get an update on his grievance and pressured Sullers, one of few African American men in the Union, on multiple occasions to drop his IDHR investigation regarding racial discrimination at TKE. (*Id.* at ¶¶18–19,

22–24). Other Union officials also attempted to induce Sullers to settle in exchange for dropping his discrimination investigation. (*Id*. at ¶23). In addition to Valone's hostility, the Union effectively prevented Sullers from being a part of the grievance process by failing to communicate with him or involve him in any way. After providing two unacceptable settlement offers to Sullers, the Union made no effort to contact him between February 8th, 2019 and December 23, 2019. (*Id.* at ¶ 20). After Sullers contacted the Union in December 2019 to get an update on his grievance and Valone yelled at him, Sullers did not hear from anyone at the Union until February 2020. (*Id.* at ¶¶ 22, 27, 30-31). Even in February, the Union only informed Sullers that his grievance was being arbitrated at the behest of the NLRB, after Sullers filed a complaint against the Union with the NLRB. (*Id.* at ¶¶ 28–30). When Sullers tried to learn more about his pending arbitration he was again stonewalled. On February 24, 2020, Sullers emailed Union official Jim Bender and was ignored. (*Id.* at ¶32). He followed up with emails to Valone and Bender on March 9, 2020, both of whom ignored him. (*Id.*) Sullers was never informed when his arbitration was scheduled or allowed to participate in the arbitration process. (*Id.* at ¶ 36). Sullers claims the Union has yet to provide him with a formal decision by the arbitrator regarding his grievance. (*Id*.) Ultimately, the Union settled his grievance on June 10, 2020 without any notice to or consent from Sullers. (*Id.* at ¶¶ 37–39). This pattern of hostility and silence, and particularly the repeated pressure placed on Sullers to drop his discrimination investigation in exchange for settlement, are sufficient to create a plausible inference that the Union's conduct was motivated by an improper motive.

The Union contends that even if Sullers alleges improper motive, his claim fails because Sullers cannot "establish that the outcome of the arbitration would probably have been different but for the union's activities." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1177 (7th Cir. 1995). In support of this argument, the Union asserts that it "represented Plaintiff in his grievance through

Written Step Two, and Plaintiff is again employed by TKE with backpay in the amount of $18,031.81 for the days he was kept home from work[,]" which "is the maximum remedy that could be obtained on Sullers' behalf through the contractual grievance and arbitration procedure…." (Dkt. 8 at 12). First, Sullers disputes whether the Union actually arbitrated his grievance, as he has yet to receive proof of such arbitration. (Complaint at ¶ 36). Moreover, even if the Union did arbitrate the grievance, Sullers was not invited to participate in the arbitration process. (*Id.*) If Sullers had testified as to the merits of his discrimination complaint during arbitration, there is certainly a possibility that the outcome would be different. Second, the asserted facts that Sullers is reemployed at TKE and received the maximum remedy possible are both extrinsic facts that this Court may not consider at this stage. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). At this stage, Sullers has adequately stated a claim for breach of the duty of fair representation and resultant harm. The Union's motion to dismiss is denied as to Count I.

## CONCLUSION

For the reasons stated herein, Sullers' motion to remand [11] is denied and the Union's motion to dismiss [7] is granted in part and denied in part. Count II of Sullers' complaint is dismissed without prejudice. Sullers may amend his complaint, consistent with this Order, within 21 days of the entry of this Order.

Virginia M. Kendall
United States District Judge

Date: September 13, 2021

11